

# REQUEST UNDER THE FREEDOM OF INFORMATION ACT

October 10, 2023

U.S. Securities & Exchange Commission
Office of FOIA Services
100 F Street NE
Washington D.C. 20549-2736

**By Email:** foiapa@sec.gov

Dear Records Officer,

On behalf of Government Accountability & Oversight, a 501(c)(3) non-profit public policy institute with research, investigative journalism and publication functions, as part of a transparency initiative seeking public records relating to environmental and energy policy and related activities at various agencies at all levels of government, which includes an active campaign of broad dissemination of public information obtained under open records and freedom of information laws to the broader population, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, **please provide** copies, within twenty working days,[1] of:

1. copies of all **electronic mail** a) sent to, from or which copies (whether as cc: or bcc:) i) **Mika Morse, ii) Luna Bloom, iii) Renee Jones, iv) Elliott Staffen and/or v) Erik Gerding**, which b) also *includes, anywhere* in an email or email 'thread', whether as a correspondent's address or otherwise in the body of, e.g., a forwarded email, i) **Overdahl** and/or ii) **SEC's #DERA climate email address**[2], and b) is dated at any time from **September 1, 2021 through October 10, 2023**, inclusive.

These terms are not case sensitive.

The subject matter of this request is that one or more of these officials may serve or have served as SEC's point of contact for a substantial part of the outreach by activist groups on the SEC's controversial push to compel speech in the name of "climate risk", and also were involved in coordination/discussions with outside activists and other interests to disparage cost estimates of the SEC's climate risk disclosure rule exposing the SEC's own low and unsupported estimate.

---

[1] *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013).
[2] Public records affirm the existence of an @SEC.gov address whose 'alias' prefix shows in to/from/cc fields as "#DERA climate", the precise prefix of which is redacted in, e.g., SEC record productions in response to request 23-00700.

1

This is of demonstrable public interest and as such any records responsive to this request are likely to be as well. For these reasons, and also GAO's broad dissemination of public information obtained under open records and freedom of information laws, GAO therefore also requests a fee waiver, on two bases in the alternative, as described below, both of which SEC must address if it denies fee waiver.

**Entire Threads/Reachback**: We seek those described records which are dated at any time during the stated period. However, SEC should not truncate any email "threads" containing any correspondence meeting this description, should any portion of that thread extend back in time further than the earliest covered date (or further in time after the latest date, depending on when SEC actually processes the request): we specifically seek the *entirety* of any email "threads" containing any correspondence meeting this description, however far back or forward in time any portion of that "thread" extends.

We seek *records*, specifically, and therefore request SEC not engage in the practice of redacting information it declares "non-responsive", which is not an enumerated exemption under FOIA.

These search parameters are sufficiently narrow and precise in their clear delineation for described records.

**Please note that this is a discrete request. Please also note that GAO will receive any claim by SEC that it is consolidating this request with any request preceding it as a consolidation of this request with the earlier request's date of sending and receipt, not the later (*i.e.*, GAO will deem SEC as accepting that this request was also sent and received on the date that prior, purportedly consolidated request was sent). Further, however, any choice to add to the complexity of the request in such event will be the SEC's alone.**

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under the FOIA unless the SEC reasonably believes release of the information will harm an interest that is protected by the exemption. FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, recipients, date, length, general subject matter, and location of each item; and
2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.
If you should seek to withhold or redact any responsive records or parts thereof, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. § 552(b). Please correlate any redactions with specific exemptions under FOIA.

In the interests of expediting the search and processing of this Request, GAO is willing to provisionally pay fees up to $200 in the event SEC denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination. Please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $200. To keep costs and copying to a minimum **please provide copies of all productions to the email used to send this request.**

Given the nature of the records responsive to this request, all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

### SEC Owes Requester a Reasonable Search

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). In this situation, there should be no difficulty in finding these documents.

### SEC Must Err on the Side of Disclosure

It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)). Accordingly, when an agency withholds requested documents, the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989); *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d 508, 515 (D.C. Cir. 1996). The act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

#### Withholding and Redaction

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege and to which specific responsive or potentially responsive record(s) such objection applies. Pursuant to high-profile and repeated promises and instructions from the previous President and Attorney General we request SEC err on the side of disclosure and not delay production of this information of great public interest through lengthy review processes over which withholdings they may be able to justify. In the unlikely event that SEC claims any records or portions thereof are exempt under any of FOIA's discretionary exemptions, we request you exercise that discretion and release them consistent with statements by a recent-past President and Attorney General, *inter alia*, that "**The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over,**

starting today" (President Barack Obama, January 21, 2009), and "Under the Attorney General's Guidelines, agencies are encouraged to make discretionary releases. Thus, even if an exemption would apply to a record, discretionary disclosures are encouraged." (Department of Justice, Office of Information Policy, OIP Guidance, "Creating a 'New Era of Open Government'").

Nonetheless, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. §552(b). We remind SEC that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). **As an example of how entire records should not be withheld when there is reasonably segregable information, we note that at bare minimum basic identifying information (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative".**

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. See *Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959(D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. Department of Justice*, 830 F.2d at 223-24.

**Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index.** If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

Please provide responsive documents in complete form. Any burden on SEC will be lessened if it produces responsive records without redactions and in complete form.

### Format of Requested Records

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. See, *e.g.,* 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. See 5 U.S.C. § 552(a)(3)(B).

Government Accountability & Oversight does not seek only those records which survive on an employee's own machine or account (re: the electronic communications), or purely electronic records. We do not demand your office produce requested information in any particular form, instead **we request records in their native format**, with specific reference to the U.S. Securities and Exchange Commission Data Delivery Standards. The covered information we seek is electronic information, this includes electronic *records*, and other public *information*.

We seek responsive records in their native form, with specific reference to the Commission's Data Delivery Standards.[3] The covered information we seek is electronic information, this includes electronic *records*, and other public *information*. To quote the SEC Data Delivery Standards, "Electronic files must be produced in their native format, *i.e.,* the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*" (emphases in original).

In many native-format productions, certain public information remains contained in the record (e.g., metadata). Under the same standards, to ensure production of all information requested, if your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and 2) make that unique metadata part of your production. Native file productions may be produced without load files. However, native file productions must maintain the integrity of the original meta data and must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. A separate folder should be provided for each custodian.

In the event that necessity requires your office to produce a PDF file, due to your normal program for redacting certain information and such that native files cannot be produced as they are maintained in the normal course of business, in order to provide all requested information each PDF file should be produced in separate folders named by the custodian, *and* accompanied by a load file to ensure the requested information appropriate for that discrete record is associated with that record. The required fields and format of the data to be provided within the load file can be found in Addendum A of the above-cited SEC Data Standards. All produced PDFs must be text searchable.

We appreciate the inclusion of an index.

### Fee Waiver Request

**Our request for fee waiver is in the alternative, first for reasons of significant public interest, and second, on the basis of the Government Accountability & Oversight' status as a media outlet**. The Commission must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

---

[3] https://www.sec.gov/divisions/enforce/datadeliverystandards.pdf.

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as GAO access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information" 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I. GAO Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). See also, 17 CFR § 200.80.

First, as explained herein, the federal government acknowledges GAO's status as a media requester. Further, in the alternative thus, the Commission must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "government operations or activities," (2) whether the disclosure "is likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "is likely to contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 17 CFR § 200.80. As shown below, GAO and this request meet each of these factors.

A. The Subject of This Request Concerns "the Operations and Activities of the Government."

**The subject matter of this request concerns the issue of SEC's work to address exposure of SEC's own projected cost estimate of its "climate risk disclosure" rule. This request asks for certain emails pertaining to that issue as discussed, above. See also, e.g., September 27, 2023, hearing before the U.S. House of Representatives Financial Services Committee.**

B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

6

As described, above, the requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Any records responsive to this request therefore are likely to have an informative value and are "likely to contribute to an understanding of Federal government operations or activities". We note President Biden's environmental agenda has been the subject of substantial media interest and promotional efforts even if concern over the "revolving door" seems to ebb somewhat depending on the occupants of the White House.[4]

Disclosure of the requested records will allow GAO to convey to the public information about the compliance with federal recordkeeping and other ethics requirements embedded in our laws. GAO will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of government operations and activities.

  C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the Ethics Obligations of a Non-Career Appointee

For reasons already described, the requested records will contribute to public understanding of the advice provided to an independent agency by a non-governmental organization. As explained above, the records will contribute to public understanding of this topic. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through GAO's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa.2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate any aspect of the particular coordination reflected in the requested records. We are also unaware of any previous

---

[4] https://www.washingtonpost.com/climate-environment/2021/01/26/biden-environmental- justice-climate/ and https://www.epa.gov/newsreleases/epa-welcomes-members-biden-harris-leadership-team (last assessed April 8, 2021).

7

release to the public of these or similar records. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations".

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of this described coordination. The public is always well served when it knows how the government conducts its activities. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about the potential conflicts of interest and recusal obligations of non-career appointees.

D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

GAO is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the described issue of requiring even senior officials comply with our laws on their way out the door.

II. GAO has the Ability to Disseminate the Requested Information Broadly.

GAO is dedicated to obtaining and disseminating information relating to energy and environmental public policy. A key component of being able to fulfill this mission and educate the public about these duties is access to information that articulates what obligations exist for senior government officials. has both the intent and the ability to convey any information obtained through this request to the public. Government Accountability & Oversight publishes its findings regularly through the organization's websites, govoversight.org and climatelitigationwatch.org. This work is frequently cited in newspapers and trade and political publications.[5] GAO intends to publish information from requested records on its website, distribute the records and expert analysis to its followers through social media platforms.

Through these means, GAO will ensure: (1) that the information requested contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that GAO possesses the expertise to explain the requested information to the public; (4) that GAO possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes GAO as a reliable source in the field of government officials' conduct.

Public oversight and enhanced understanding of the Administration's duties is absolutely

---

[5] *See*, e.g., recent coverage at Editorial, *Wall Street Journal*, "Biden's 'BackDoor' Climate Plan," March 17, 2021, https://www.wsj.com/articles/bidens-backdoor-climate-plan-11616020338, and Stuart Parker, "Conservative Group Says States' Ozone Suit 'Trojan Horse' for GHG Limits," Inside EPA, February 24, 2021.

necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney v. U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). GAO need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for GAO to show how it distributes information to the public generally. *Id*.

> III. Obtaining the Requested Records is of No Commercial Interest to the Requester.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to GAO's role of educating the general public. GAO is a 501(c)(3) nonprofit public policy institute dedicated to transparency in public energy and environmental policy. Due to its nonprofit mission, GAO has no commercial interest and will realize no commercial benefit from the release of the requested records.

Therefore, **Government Accountability & Oversight first seeks waiver of any fees** under FOIA on the above significant public interest basis.

**In the alternative**, Government Accountability & Oversight requests a waiver or reduction of fees as a representative of the news media. The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. As Government Accountability & Oversight is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F.Supp.2d. 1 (D.D.C. 2010). Alternately and only in the event the refuses to waive our fees under the "significant public interest" test, which Requester would then appeal while requesting the proceed with processing on the grounds that Government Accountability & Oversight is a media organization, a designation the federal government has acknowledged for the purposes of FOIA, the must explain any denial of treatment of GAO as a media outlet. Requester asks for a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by a representative of the news media…").

The Commission must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

## Conclusion

We request the SEC to provide particularized assurance that it is reviewing some quantity of records with an eye toward production on some estimated schedule, so as to establish some reasonable belief that it is processing our request. 5 U.S.C.A. § 552(a)(6)(A)(i); see also *CREW v. FEC*. The SEC must at least inform us of the scope of potentially responsive records — **which should be de minimis** — including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions; FOIA specifically requires the SEC to immediately notify GAO with a particularized and substantive determination, and of its determination and its reasoning, as well as GAO's right to appeal; further, FOIA's unusual

circumstances safety valve to extend time to make a determination, and its exceptional circumstances safety valve providing additional time for a diligent Commission to complete its review of records, indicate that responsive documents must be collected, examined, and reviewed in order to constitute a determination. *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013). *See also*, *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221; 2011 U.S. Dist. LEXIS 110396 at *14 (D.D.C. Sept. 28, 2011)(addressing "the statutory requirement that [agencies] provide estimated dates of completion").

We request that the SEC furnishes records to my attention as soon as they are identified, preferably electronically, but as needed then to my attention, at the address below. We inform the SEC of our intention to protect our appellate rights on this matter at the earliest date should the SEC not comply with FOIA per, *e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).

GAO looks forward to your response. In the event you have any questions, please feel free contact me at the below email address. Thank you for your prompt attention, time and consideration to this matter.

                                        Respectfully submitted,
                                        Joe Thomas
                                        Joe@govoversight.org